IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ALVIS KEE AND CECILIA KEE,

            Plaintiff,

vs.                                                   No. CIV 02-1243

OFFICER STEPHAN SMITH,
OFFICER JOHN AHLM, and
OFFICER RICK SIMMONS,

            Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant John Ahlm's Federal Rule of Civil

Procedure 50(b) Motion for Judgment as a Matter of Law, or, Alternatively, Rule 59 Motion for a

New Trial, filed February 22, 2005 **[Doc. No. 109]**.  The Court having considered the motion,

briefs, and relevant law, and being otherwise fully informed, finds that the motion is not well taken

and will be denied.

## BACKGROUND

This matter was tried before a jury beginning January 24, 2005.  At the close of Plaintiffs

Alvis Kee and Cecilia Kee's evidence, Defendant Ahlm moved for judgment as a matter of law

pursuant to Federal Rule of Civil Procedure 50(a).  The Court granted Defendant Ahlm's motion

in part.  Specifically, the Court dismissed as a matter of law Plaintiff Cecilia Kee's 42 U.S.C.

Section 1983 claims for unlawful arrest and malicious prosecution.  The Court, however, denied

Defendant Ahlm's motion to the extent it sought dismissal as a matter of law of Plaintiff Cecilia

Kee's Section 1983 excessive force claim and Plaintiff Alvis Kee's Section 1983 unlawful arrest,

malicious prosecution, and excessive force claims.

On January 28, 2005, the jury returned a verdict in favor of Plaintiff Alvis Kee and against Defendant John Ahlm in the amount of $22,500.00 on the arrest without probable cause, malicious prosecution, and excessive force claims.  The jury did not return a verdict in favor of Cecilia Kee on the excessive force claim.

On February 7, 2005, the Clerk of Court entered judgment in favor of Plaintiff Alvis Kee and against Defendant Ahlm.  On February 22, 2005, Defendant Ahlm filed his timely Motion for Judgment as a Matter of Law, or, Alternatively, Motion for a New Trial.

## STANDARD

Federal Rule of Civil Procedure 50(a) provides that "[i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party."  Rule 50(b) provides that "[i]f, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal question raised by the motion.  The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment--and may alternatively request a new trial."

In deciding whether to enter judgment as a matter of law pursuant to Rule 50, a district court must view the evidence most favorably to the party against whom the motion is made, and give that party the benefit of all reasonable inferences.  *Hurd v. American Hoist & Derrick Co.*,

734 F.2d 495, 498 (10th Cir. 1984).  A district court may not weigh the evidence or pass upon the witnesses' credibility, or substitute its judgment for that of the jury.  *Id.*

Federal Rule of Civil Procedure 59(a) provides that a "new trial may be granted to all or any of the parties and on all or part of the issues . . . in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted."  A motion for a new trial must be filed no later than ten days after entry of the judgment.

## DISCUSSION

In his Rule 50(b) renewed Motion for Judgment as a Matter of Law, Defendant Ahlm argues (1) that the Court erred in submitting Plaintiff's arrest without probable cause and malicious prosecution claims to the jury because Defendant Ahlm, as a matter of law, had probable cause to arrest and initiate the criminal proceedings against Plaintiff Alvis Kee, (2) that the Court erred in submitting the malicious prosecution claims to the jury because Plaintiff Alvis Kee failed to present any evidence that the underlying proceedings terminated in his favor or that Defendant Ahlm acted with malice, (3) that the Court's alleged error in submitting the unlawful arrest and malicious prosecution claims to the jury prejudiced Defendant Ahlm with respect to the excessive force claim because the jury would not have found against Defendant Ahlm on the excessive force claim if the Court had not wrongfully submitted the unlawful arrest and malicious prosecution claims to the jury, and (4) that the Court erred in submitting the excessive force claim to the jury because the evidence presented at trial did not support the claim.  In his Rule 59 Motion for a New Trial, Defendant Ahlm asks the Court, in the alternative, to grant a new trial. The Court addresses each of Defendant Ahlm's arguments in turn.

3

I.      **Motion for Judgment as a Matter of Law.**

    A.      **Probable Cause.**

Defendant Ahlm argues that the Court erred in submitting Plaintiff's claims for arrest

without probable cause and malicious prosecution to the jury because Defendant Ahlm, as a

matter of law, had probable cause to arrest and initiate the criminal proceedings against Plaintiff

Alvis Kee for committing criminal trespass.  Criminal trespass "consists of knowingly entering or

remaining upon the lands of another knowing that such consent to enter or remain is denied or

withdrawn by the owner or occupant thereof."  Farmington City Code § 18-3-11(a).

Federal Section 1983 claims for arrest without probable cause and malicious prosecution

both require a plaintiff to prove a lack of probable cause for the initial arrest and/or the

subsequent criminal prosecution.  *See, e.g.*, *Cortez v. McCauley*, No. 04-2062, 2006 U.S. App.

LEXIS 3270, at *11 (10th Cir. Feb. 10, 2006); *Pierce v. Gilchrist*, 359 F.3d 1279, 1294-95 (10th

Cir. 2004).  Defendant Ahlm maintains that at trial there were no disputed issues of fact and that

the Court should have decided probable cause to arrest Plaintiff Alvis Kee for criminal trespass as

a matter of law.  According to Defendant Ahlm, the undisputed evidence shows that the

Turnaround Bar authorized the Farmington Police Department to enter and enforce Farmington's

criminal trespass statute by virtue of the Trespass Arrest or Citation Authorization to Farmington

Police Department, which was entered into evidence at trial as Exhibit S ("Trespass

Authorization").  James Dance testified that he specifically requested that the Farmington officers

remove both Mr. and Mrs. Kee from the premises.  Based upon these undisputed facts, Defendant

Ahlm argues that he had probable cause to arrest Plaintiff Alvis Kee and that the Court should

have so found as a matter of law.

Simply because the evidence indicates that Mr. Dance requested that law enforcement officers remove Plaintiff Alvis Kee from the premises and because the Trespass Authorization granted Defendant Ahlm the authority to advise certain persons committing criminal trespass to leave the premises does not mean that Defendant Ahlm, as a matter of law, had probable cause to arrest Plaintiff Alvis Kee for criminal trespass.   "'Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense.'" *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995) (quoting *Jones v. City & County of Denver*, 854 F.2d 1206, 1210 (10th Cir. 1988)) (additional citations omitted). To lawfully arrest Plaintiff Kee for the offense of criminal trespass, Defendant Ahlm was required to have probable cause to believe that Plaintiff Kee was "*knowingly* entering or remaining upon the lands of another *knowing* that such consent to enter or remain is denied or withdrawn by the owner or occupant thereof."   Farmington City Code § 18-3-11(a) (emphasis added).

The existence of probable cause may be a question of law for the Court if the parties do not dispute the underlying facts.   Because the underlying facts at trial were in dispute, probable cause was a question of fact for the jury.   Specifically, a factual question existed with respect to whether Plaintiff Alvis Kee knowingly remained upon the premises of the Turnaround Bar knowing that the Bar or its agent James Dance revoked or withdrew consent for Alvis Kee to be on the premises.   No evidence indicated that James Dance or any other staff at the Turnaround Bar instructed Plaintiff Alvis Kee to leave the premises or informed Plaintiff Alvis Kee that

consent for him to remain on the premises had been revoked or withdrawn.  Moreover, Plaintiff Alvis Kee testified that he did not believe that the officers had any lawful basis to remove him from the premises and that he did not believe that the officers could enforce their threat to arrest him because the officers were not the property owners.  Because of this factual dispute, the Court properly submitted the question of probable cause to the jury.

The Court's submission of the question of probable cause to the jury also was proper because there was sufficient evidence presented at trial to allow a reasonable jury to conclude that Defendant Ahlm acted without probable cause to arrest Plaintiff Alvis Kee for criminal trespass. The evidence viewed in Plaintiff Alvis Kee's favor, *see supra*, demonstrates that he did not knowingly remain on the premises knowing that consent had been revoked.  Because a reasonable jury could have found a lack of probable cause to believe that Plaintiff Kee acted knowing that consent had been revoked, the Court properly submitted the arrest without probable cause and malicious prosecution claims to the jury.

**B.      Favorable Termination and Malice.**

1.      Favorable Termination.

Defendant Ahlm maintains that the Court erred in submitting the malicious prosecution claims to the jury because Plaintiff Alvis Kee failed to present any evidence that the underlying proceedings terminated in his favor or that Defendant Ahlm acted with malice.  A federal Section 1983 claim for malicious prosecution requires that a plaintiff demonstrate that the underlying criminal proceedings were terminated in the plaintiff's favor.  *See Pierce*, 359 F.3d at 1294 (citing *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994)).  Defendant Ahlm argues that in New Mexico

6

dismissal for lack of prosecution does not constitute a favorable termination as a matter of law. Defendant Ahlm therefore concludes that the Court erred in failing to dismiss Plaintiff Alvis Kee's malicious prosecution claim as a matter of law.

It is generally accepted that the common law of torts is the starting point for determining the contours of a malicious prosecution claim under Section 1983. *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996). Although the common law is the starting point, a district court must always reach the ultimate federal question of whether the plaintiff has proven a constitutional violation. *Taylor v. Meacham*, 82 F.3d 1556, 1561 (10th Cir. 1996). The Tenth Circuit, using state law as the starting point, has concluded that in New Mexico only terminations indicating that the accused is innocent are favorable. *See Mendoza v. K-Mart, Inc.*, 587 F.2d 1052, 1057 (10th Cir. 1978) ("New Mexico law allow[s] recovery for malicious prosecution only if the criminal prosecution against the plaintiff is disposed of in a way which indicates his innocence"); *see also* Restatement (Second) of Torts § 660 cmt. a ("Proceedings are 'terminated in favor of the accused' . . . only when their final disposition is such as to indicate the innocence of the accused."). The question therefore becomes whether dismissal for failure to comply with speedy trial requirements constitutes a dismissal in a manner which indicates Plaintiff Alvis Kee's innocence.

Although the Tenth Circuit has not specifically addressed this question, the Second Circuit has held that dismissal for failure to comply with speedy trial requirements constitutes a favorable termination. *See, e.g.*, *Murphy v. Lynn*, 118 F.3d 938, 949 (2d Cir. 1997); *Posr v. Court Officer Shield*, 180 F.3d 409, 418 (2d Cir. 1999). In *Murphy v. Lynn*, the Second Circuit refused to find

7

that a dismissal for failure to comply with speedy trial requirements constitutes an unfavorable

termination, reasoning that if the Circuit so found, an accused would be forced to relinquish his or

her constitutional right to a speedy trial in order to vindicate his or her right to be free from

malicious prosecution.  118 F.3d at 949-50 ("to view a dismissal for failure to prosecute within

the time allowed as a termination not favorable to the accused would have the effect of unfairly

'compelling one charged with a criminal offense to waive his constitutional or statutory right to a

speedy trial in order to preserve his right to civil retribution for a demonstrated wrong'")

(citations omitted); *accord Posr*, 180 F.3d at 418.  The Second Circuit considered the fact that,

under New York state law (as under New Mexico state law), to be favorable a final disposition

must indicate the innocence of the accused.  *Murphy*, 118 F.3d at 948 (citing New York cases).

The Second Circuit concluded that dismissal for failure to comply with speedy trial rights

constitutes a dismissal in a manner indicating the innocence of the accused.  *See id.* at 949 ("Part

of the rationale for viewing a dismissal for the prosecution's failure to prosecute in timely fashion

as favorable to the accused is that 'the failure to proceed to the merits compels an inference of

such an unwillingness or inability to do so as to imply a lack of reasonable grounds for the

prosecution.'") (citations omitted).  The Court finds the reasoning of the Second Circuit

persuasive, and concludes that, as a matter of federal law, dismissal for failure to comply with

speedy trial requirements indicates an accused's innocence and constitutes a favorable

termination.  Dismissal for the prosecution's failure to comply with speedy trial deadlines is unlike

an accused's procurement of a dismissal by compromise or settlement.  *Cf. Marchbanks v. Young*,

47 N.M. 213, 218, 139 P.2d 594 (1943) (plaintiff cannot maintain malicious prosecution action

8

where plaintiff procured dismissal of underlying suit based upon compromise and settlement) (citations omitted).  Accordingly, the Court finds that Plaintiff Alvis Kee has demonstrated as a matter of law a favorable termination of the underlying criminal proceedings, and the Court therefore denies Defendant Ahlm's motion for judgment as a matter of law on the malicious prosecution claim.

        2.     Malice.

      The Court also denies Defendant Ahlm's motion for judgment as a matter of law on the malicious prosecution claim on the ground that "Plaintiff Kee failed to present any evidence that Officer Ahlm had any purpose other than bringing an offender to justice."  The evidence viewed in the light most favorable to Plaintiff Alvis Kee was sufficient for a reasonable jury to conclude that Defendant Ahlm acted with malice in commencing or continuing the criminal proceedings.

      A reasonable jury could have found, based upon the evidence viewed in the light most favorable to Plaintiff Alvis Kee, that Defendant Ahlm acted with malice with respect to the initiation of the criminal proceedings as well as with respect to the arrest.  Specifically, the evidence viewed favorably to Plaintiff indicates that Defendant Ahlm shouted profanities at Plaintiffs Alvis and Cecilia Kee, that Defendant Ahlm used force against Plaintiff Alvis Kee to handcuff and escort him to the patrol vehicle despite the fact that Plaintiff was cooperative and not resisting arrest, that Defendant Ahlm used force in "slamming" Plaintiff Kee on the patrol car and "shoving" him into the patrol car despite Alvis Kee's continued cooperation, and that, based upon Plaintiff Alvis Kee's training, it is inappropriate to "slam" a compliant prisoner on a car or "shove" a compliant prisoner into a patrol car.  The evidence also indicates that after the arrest

the law enforcement officers gathered into a group and began taking among themselves and that one of the officers, either Officer Ahlm or Officer Smith, then approached Jaime Morales and said, "This is a major fuck up," and asked "Why didn't you tell us [Mr. Kee was an officer]?"  The evidence further indicates discrepancies in Defendant Ahlm's police report and certain testimony of Plaintiff's witnesses.  Based upon this evidence, a reasonable jury could have concluded that Defendant Ahlm acted with malice in arresting Plaintiff Alvis Kee and commencing or assisting to commence proceedings against Alvis Kee.  The Court therefore denies Defendant Ahlm's motion for judgment as a matter of law on this ground.

### C.      Prejudice.

Defendant Ahlm argues that the Court's submission to the jury of the false arrest and malicious prosecution claims prejudiced him with respect to the excessive force claim.  According to Defendant Ahlm, "In the event that the Court had correctly found that Officer Ahlm had probable cause to arrest Mr. Kee, the jury would have had no basis upon which to accept Mr. Kee's verbal and physical resistance to arrest.  Consequently, the jury would not have found Officer Ahlm liable for excessive force."

Defendant Ahlm's argument does not have merit.  First, as described above, the Court properly submitted the false arrest and malicious prosecution claims to the jury.  Second, even if the Court had erred in submitting one or both of the claims, Defendant Ahlm would not have suffered any prejudice as a result of the error.  The Court instructed the jury that every person has the right to be free from the use of excessive force while being arrested by a law enforcement officer even though the arrest is otherwise proper.  *See* Court's Instruction to the Jury No. 8

10

**[Doc. No. 106]**.  Accordingly, whether an arrest is conducted with probable cause (or without it) makes it no more likely (or unlikely) that an officer used excessive force in making the arrest. Therefore, the fact that the Court allowed Plaintiff Alvis Kee's claims of arrest without probable cause or malicious prosecution to go forward to the jury would have no legal effect upon Plaintiff Alvis Kee's excessive force claim.

     **D.**    **Insufficient Evidence to Support the Excessive Force Claim.**

    Defendant Ahlm also argues that Plaintiff Alvis Kee's claim of excessive force was not supported by the evidence presented at trial.  Defendant Ahlm claims that his actions "were clearly reasonable given the circumstances in which he was faced with a dangerous situation and a suspect that refused to comply with police commands."

    A claim that a law enforcement officer has used excessive force in the course of an arrest must be analyzed under the "reasonableness" standard of the Fourth Amendment.  *Graham v. Connor*, 490 U.S. 386, 395 (1989). "The 'reasonableness' inquiry in an excessive force case is an objective one:  the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.  This inquiry must be made "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and with "careful attention to the facts and circumstances of each particular case." *Id.* at 396.

    Construing the evidence in the light most favorable to Plaintiff Alvis Kee, the Court concludes that a reasonable jury could have found that Defendant Ahlm's actions were not objectively reasonable and were excessive under the totality of the circumstances.  At trial, the

evidence construed in the light most favorable to Plaintiff Alvis Kee showed that he was not resisting arrest, acting in an aggressive or threatening manner, or attempting to evade arrest by flight, and that Defendant Ahlm nonetheless used force against him.

For example, Plaintiff Alvis Kee testified that Defendant Ahlm handcuffed him, without double locking the handcuffs, and "basically pull[ed] [him], half carrying [him] on [his] toes," walking "sideways," "lift[ing] up the handcuffs," while taking him "out towards the patrol car." Defendant Ahlm, by lifting the handcuffs, and causing the cuffs to dig into the skin, inflicted pain upon Plaintiff Alvis Kee.  As Defendant Ahlm was lifting the cuffs and "half carrying" Plaintiff Kee to the patrol car, Plaintiff testified that he kept telling Defendant Ahlm that he did not have to "do that."  Defendant Ahlm, however, did not stop "lifting" the handcuffs or "half carrying" Plaintiff.  Plaintiff Alvis Kee also testified that he was not resisting while he was being handcuffed and escorted to the patrol car, and that Defendant Ahlm could have handcuffed and escorted him without using any force.

In addition, Plaintiff Alvis Kee testified that once Defendant Ahlm had taken him to the patrol car, Defendant Ahlm grabbed Plaintiff Alvis Kee's head and "just slammed it down hard on the hood of the car" and "held down [his] head" in a manner "[t]hat was painful," and that hurt him "[o]n the head."  While doing this, Defendant Ahlm yelled profanities at Plaintiff Kee, indicating that Plaintiff Kee had "better" listen to him.  Thereafter, Plaintiff Alvis Kee testified that Defendant Ahlm "had his hand right over the back of [his] head, above [his] neck area, and was holding it down hard against the . . . hood of the car."  Plaintiff Alvis Kee also testified that he was not resisting at that point, and that he had no reason to resist.

12

Plaintiff Alvis Kee testified that Defendant Ahlm then "took [him] to the backside of the car, right on the trunk, and did the very same thing again. He slammed [Plaintiff Kee's] head onto the trunk of the unit." Plaintiff Kee testified that he was doing nothing that required Defendant Ahlm to use this kind of force. Plaintiff further testified that his wife was yelling that Defendant Ahlm did not need to use that level of force. When Defendant Ahlm put him in the patrol car, Plaintiff Alvis Kee testified that Defendant Ahlm "shoved [him] up against the roof of that car." Plaintiff Kee hit the top of the roof with his left side and hurt the left side of his rib cage.

In addition to his own testimony, Plaintiff Alvis Kee presented testimony of eye witnesses that would allow a reasonable jury to find in favor of Plaintiff Kee on the excessive for claim. For example, Jamie Morales testified that Alvis Kee "didn't do anything," that "there wasn't anything that I saw him do for any reason for them to arrest him." Mr. Morales further testified that the officers "cuffed him, " and then "walked him to the front of the squad car and he was slammed on the hood of the car." According to Mr. Morales, Alvis Kee was "slammed about two or three times." Mr. Morales further testified that "when I say slammed, basically he was handcuffed with his hands behind his back, and they repeatedly told him to just shut the . . . up . . . [and] when they grabbed him, they slammed him on the hood, and it was loud. It was real loud. I've never seen people get treated like that before. It's just not right."

Franklin Belen also testified that he saw Defendant Ahlm "slam[] Alvis on the hood about three times and he was yelling something at him. In addition, David Benally testified that the officers "pushed" Alvis Kee over, "on top of the car, pushed down with the left hand on the neck side pushed down." According to Mr. Benally, the officers were "holding him down, and then his

head hit, a bang on the car, on his face."  Mr. Benally also testified that they "took him around the back of the car and sat him down, pushed him in the car."  In addition, Christopher Belen, through deposition, testified that the officers "really like--like slammed [Alvis Kee] on the hood of the car."  Then, they "picked him back up again and they took him to the trunk and they did the same thing . . . [l]ike slammed, slammed him on the trunk of the car."  Then, they "opened the door and they tried to push him in the--push him in the back, the back seat of the car."  Cecilia Kee also testified that the officers "slammed" her husband onto the police car and that the officers pushed him into the patrol car.  Cecilia Kee further testified that her husband was not resisting.

Based upon this evidence, a reasonable jury could have found in favor of Plaintiff Alvis Kee on his excessive force claim.  Accordingly, the Court denies Defendant Ahlm's Motion for Judgment as a Matter of Law on this ground.

Defendant Ahlm's argument that his "actions were within the scope of authorized reasonable force under the Reactive Control Model, which Plaintiff Alvis Kee's own admission was in effect at the time of Mr. Kee's arrest" does not persuade the Court otherwise.  Federal, and not state, law governs the question whether force is excessive, even though the police actions are those of state police officers.  *See, e.g.*, *United States v. Miller*, 452 F.2d 731, 733 (10th Cir. 1971) (citations omitted).  "Federal excessive force claims are governed by an objective standard:  a use of force violates the Fourth Amendment if it is unreasonable under the circumstances a law enforcement officer confronts."  *Tanberg v. Sholtis*, 401 F.3d 1151, 1163 (10th Cir. 2005) (citing *Graham v. O'Connor*, 490 U.S. 386, 388 (1989)).  In *Tanberg v. Sholtis*, the Tenth Circuit explicitly "rejected the use of local police regulations as a standard for

14

evaluating constitutionality of police conduct," regardless of whether it is in the context of the

Fourth Amendment's exclusionary rule or, as here, a claim for use of excessive force under 42

U.S.C. Section 1983. *Id*. The court held that the fact that "an arrest violated police department

procedures does not make it more or less likely that the arrest implicates the Fourth Amendment,

and evidence of the violation is therefore irrelevant." *Id*. at 1163-64. The converse, likewise is

true. That an arrest does not violate department procedures, including the Reactive Control

Model used by the Albuquerque Police Department, does not make it less likely that an arrest was

conducted with excessive force.

Moreover, even if the Court were to assume that Defendant Ahlm complied with the

Reactive Control Model, and that his compliance constitutes evidence of the reasonableness of his

actions, the Court would not grant judgment as a matter of law in Defendant Ahlm's favor. In

evaluating a motion for judgment as a matter of law, the Court must construe the evidence in the

light most favorable to Plaintiff Alvis Kee. Based upon the evidence viewed in this light, the

Court already has concluded that a reasonable jury could have found in favor of Alvis Kee on the

excessive force claim.

**V.        Motion for a New Trial.**

Defendant Ahlm argues that if the Court denies his motion for judgment as a matter of

law, the Court should set aside the verdict against him and grant him a new trial. Federal Rule of

Civil Procedure 59(a) provides that a new trial may be granted "for any of the reasons for which

new trials have heretofore been granted." Defendant maintains that a "new trial may be granted if

prejudicial error has occurred or if the verdict is against the weight of the evidence." Because the

Court finds that no prejudicial error has occurred and because it finds that the verdict is not

against the weight of the evidence, the Court denies Defendant Ahlm's motion for a new trial.

**CONCLUSION**

For the reasons stated above, **IT THEREFORE IS ORDERED** that Defendant John

Ahlm's Motion for Judgment as a Matter of Law, or, Alternatively, Motion for a New Trial, filed

February 22, 2005 **[Doc. No. 109]**, is hereby DENIED.

Dated this 28th day of February 2006.

JUDITH C. HERRERA
UNITED STATES DISTRICT JUDGE

16